# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,        CASE NO. 17-11312
                                HON. DENISE PAGE HOOD

v.

TILSMAN DALE HOLBROOK,
THE HAPPY HOUR TAVERN, LLC,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#18]

### I. BACKGROUND

On April 25, 2017, Plaintiff J & J Sports Productions, Inc. ("J & J Sports") brought this action against Defendants Tilsman Dale Holbrook ("Holbrook") and The Happy Hour Tavern, LLC ("The Happy Hour Tavern") (collectively, Defendants) for the Unauthorized Publication or Use of Communications (47 U.S.C. § 605) (Count I), Unauthorized Reception of Cable Service (47 U.S.C. § 553) (Count II), and Common Law Conversion (Count III). (Doc # 1) Ronald D. French ("French") appeared on behalf of Defendants on June 7, 2017. (Doc # 7)

The Scheduling Order set July 31, 2017 as the deadline for initial disclosures. (Doc # 10) On July 31, 2017, French sought and was granted an extension, to

1

September 16, 2017, to make initial disclosures and respond to Plaintiff's Discovery. (Doc # 13) Defendants failed to respond. On September 27, 2017, pursuant to a Stipulation and Order, Defendants were ordered to make initial disclosures and respond to Plaintiff's Discovery within fourteen days. *Id.* Defendants failed to comply. On October 19 2017, the Court ordered that the facts embraced by Plaintiff's Discovery are taken as established pursuant to Fed. R. Civ. P. 37(b)(2)(A).

On October 16, 2017, French filed a Motion to Withdraw as Counsel for Defendants. (Doc # 15) In support of his Motion, French provided the following: (1) French attempted to contact Defendants by phone several times; (2) French went to Defendants' place of business, The Happy Hour Bar, on three separate occasions to deliver the Discovery requests, request for initial disclosure information, and to provide instruction for the same; (3) Defendants refused to provide responses to Discovery and refused to provide initial disclosures; and (4) due to Defendants' failure to cooperate, there was an irreparable breakdown in the attorney-client relationship. *Id.*

The Court granted French's Motion on November 20, 2017. (Doc # 21) The Court also ordered The Happy Hour Tavern to obtain legal representation by December 12, 2017 to defend this case. *Id.* A Status Conference was set for January 4, 2018. *Id.* Defendants failed to appear.

J & J Sports was the owner of the exclusive nationwide television distribution (closed-circuit) rights to the *"Mayhem" Floyd Mayweather, Jr. v. Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program* ("Program"), which took place on May 3, 2014. J & J Sports alleges that Defendants unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at the time of its transmission at the commercial establishment, The Happy Hour Tavern. Neither Defendants, nor anyone else on their behalf, ordered the event for The Happy Hour Tavern from J & J Sports, nor was a licensing fee for the exhibition of the Program paid to J & J Sports. Defendants have admitted to displaying the program through both cable and satellite means.

In advance of the Program, Defendants, or some other person acting on their behalf, advertised that the event would be telecast at The Happy Hour Tavern. Defendants were aware that a commercial sub-licensing fee had to be paid to J & J Sports in order to lawfully telecast the event in the establishment. Patrons of the establishment watched the event within The Happy Hour Tavern on May 3, 2014. Defendant Holbrook is the owner and manager of The Happy Hour Tavern and was present at the time the Program was displayed. It is alleged that Defendants knew that The Happy Hour Tavern was not properly authorized to exhibit the event and that commercial establishments are required to have a commercial license to broadcast pay-per-view boxing events. Prior to May 3, 2014, the Defendants

exhibited pay-per-view broadcasts other than the Program, and these broadcasts were owned by Plaintiff and others as well.

Plaintiff seeks a judgment in its favor, against Defendants, jointly and severally, for statutory damages in the amount of $116,431.12 representing the following:

    1. $10,000.00, pursuant to 47 U.S.C. § 605(a), for the non-willful violation of the Communications Act of 1934;

    2. $100,000.00, pursuant to 47 U.S.C. § 605(e), for the willful and malicious violations of the Communications Act of 1934; and

    3. $6,431.12, pursuant to 47 U.S.C. § 605(e), for attorneys' fees and costs that Plaintiff has incurred related to this matter.

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view admissible evidence in the light most favorable to the nonmoving party, where "the

moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. 47 U.S.C. § 605

J & J Sports argues that it has established that Defendants unlawfully intercepted and displayed its program. J & J Sports argues that this act was committed willfully and for purpose of commercial advantage or private financial gain. While J & J Sports has alleged that Defendants have violated both 47 U.S.C. § 605 and 47 U.S.C. § 553, courts have held that when a defendant is liable under both § 553 and § 605, a plaintiff may recover under only one section. *See J & J Sports Productions, Inc. v. Palumbo*, No. 4:12-cv-2091, 2012 WL 6861507, at *3 (N.D.Ohio Dec. 12, 2012); *Joe Hand Promotions, Inc. v. RPM Management Co.*

5

*LLC*, No. 2:11-cv-377, 2011 WL 5389425, at *2 (S.D.Ohio Nov. 7, 2011). J & J Sports has elected to pursue damages pursuant to 47 U.S.C. § 605. This Court makes note that Plaintiff has not alleged facts sufficient to establish that Defendants necessarily violated § 553 nor Common Law Conversion.

> Section 605(a) of the Communication Act provides as follows:
>
> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or public the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception ... to any person other than the addressee, his agent, or attorney ....

47 U.S.C. § 605(a). Title 47 United States Code Section 605(a) applies to satellite transmissions. *United States v. One Macomb Video Cipher II,* 985 F.2d 258, 260 (6th Cir.1993) ("Enacted prior to the ECPA, § 605 prohibits the unauthorized interception of traditional radio communications and communications transmitted by means of new technologies, including satellite communications."). Subsection (e) provides for private civil enforcement of § 605(a) for any person aggrieved by any violation under 47 U.S.C. § 605(a). 47 U.S.C. § 605(e)(3)(A) ("Any person aggrieved by any violation of subsection (a) of this section ... may bring a civil action in a United States district court or in any other court of competent jurisdiction."). Furthermore, § 605(e) designates varying penalties and/or damages, depending on whether or not a violation was willful.

In the Sixth Circuit, courts have adopted a three part test to determine whether a defendant has violated § 605(a). *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 914-917 (6th Cir.2001). Courts typically consider: 1) whether the plaintiff had a proprietary interest in the communication; 2) whether the defendant intercepted that communication; and 3) whether the defendant unlawfully divulged the communication to its patrons. *Id.*

J & J Sports has sufficiently demonstrated that it has a valid § 605(a) claim. First, the Closed-Circuit Television License Agreement proves that J & J Sports had a proprietary interest in the Program. (Doc # 18-7) Second, the Defendants intercepted the Program on May 3, 2014. (Doc # 18-3) Third, the Program was displayed to Defendants' patrons on May 3, 2014 without the consent of J & J Sports. *Id.* The Court also acknowledges that although Defendants have had the opportunity to make disclosures and participate in discovery, they have neglected to do so, and as a result, have not produced any evidence on their own behalf.

The Court also agrees with J & J Sports with regard to the liability of Holbrook. Holbrook was the owner and manager of The Happy Hour Tavern, and can be held liable in his individual capacity for the § 605(a) violation because he had the right and ability to supervise the violation. *G & G Closed-Circuit Events, LLC v. Macedonian Enterprises, Inc.*, No. 14-12982, 2015 WL 3679863, at *2 (E.D. Mich. June 12, 2015) (citing *J & J Sports Prods., Inc. v. Ribeiro,* 562 F.Supp.2d 498

(S.D.N.Y.2008)). Further, Holbrook cannot escape liability under § 605(a) by asserting that he was not present when the unlawful act occurred. *See J & J Sports Prods., Inc. v. J & J Keynote Lounge, Inc.*, No. 11-CV-15002, 2013 WL 1747803, at *9 (E.D. Mich. Apr. 23, 2013). Therefore, Holbrook is liable for The Happy Hour Tavern's § 605(a) violation.

**C. Damages**

**1. Statutory Damages**

J & J Sports is seeking $116,431.12 in statutory damages, jointly and severally, from Defendants. This Court partially grants Plaintiff's request.

A claimant who has established liability under § 605(a) may elect between actual or statutory damages under § 605(e)(3)(C)(i). Plaintiff here elects an award of statutory damages under § 605(e)(3)(C)(i)(II). (Doc # 18, Pg ID 73) The amount of statutory damages to be awarded to Plaintiff is within the discretion of the Court. *See* § 605(e)(3)(C)(i)(II) ("as the court considers just"). In calculating statutory damages, courts typically consider the price a defendant would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area. *Joe Hand Promotions, Inc. v. Potopsky*, No. 1:10-cv-1474, 2011 WL 2648610, at *4 (N.D. Ohio July 6, 2011).

Here, Plaintiff submitted evidence showing that Defendants should have paid $2,200 to show the Program. (Doc # 18-4, Pg ID 133) This Court however does not

8

find that amount of compensation to be sufficient to deter Defendants from engaging in future conduct that is in violation of § 605. *See J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 917 (N.D. Cal. 2012) (explaining that District courts take deterrence into consideration when determining how to properly compensate plaintiffs). Defendants have previously shown pay-per-view broadcasts at their establishment without permission on two separate occasions. *Joe Hand Promotions, Inc. v. The Happy Hour Tavern, LLC, et al.*, No. 14-cv-11693 (E.D. Mich.); *J & J Sports Prods., Inc. v. Happy Hour Tavern, LLC*, No. 15-13042, 2016 WL 1399255, at *3 (E.D. Mich. Apr. 11, 2016). In both cases, Defendants similarly failed to appear and defend, and the courts entered default judgments against Defendants. In light of the facts and circumstances of this case, and due to the Defendants' history of violating § 605, this court will multiply the base statutory damages amount by three, totaling the amount to $6,600.

### 2. Enhanced Damages

In addition to the elected form of damages, § 605 provides for: enhanced damages for willful conduct, up to $100,000. *See* 47 U.S.C. §§ 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" *J & J Sports Prods., Inc. v. Guzman,* 553 F.Supp.2d 195, 199 (E.D.N.Y. 2008) (citations omitted). Some courts have found that willfulness under section 605 is "established by the fact that an event is broadcast without

authorization." *Id.* The Court finds that here, Plaintiff has demonstrated willful conduct on the part of Defendants. According to Plaintiff, Defendants broadcasted the Program without having the proper authority to do so, and because the record indicates that Defendants have a history of violating § 605, their actions were deliberate. Further, Defendants were apprised of the claims against them, including the willfulness charge, yet chose not to defend against them. (Doc # 18, Pg ID 50) A failure to defend has also been considered evidence of willfulness. *See, e.g., J & J Sports Prods., Inc. v. Tonita Restaurant, LLC*, No. 5:13-cv-382, 2015 WL 9462975, at *4 (E.D. Ky. Dec. 28, 2015).

Having concluded that Defendants willfully violated § 605, the Court will multiply the base statutory award by three. This results in an award of $6,600 in enhanced damages. The Court believes that this amount is reasonable considering that Defendants are repeat offenders, and is consistent with how other courts in this district have chosen to award enhanced damages. *See, e.g., J & J Sports Prods., Inc. v. Bader Matti*, No. 14-12981, 2015 WL 900478, at *5 (E.D. Mich. Mar. 3, 2015).

**3. Attorneys' Fees and Costs**

Under § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff submitted its attorneys' invoice, billing Plaintiff for 24.1 hours. (Doc # 18-5) These hours were billed at an hourly rate of $245, which is customary within the

region. (Doc # 18-6) (State Bar of Michigan Billing Rate Summary Report). The Court deems this amount reasonable. Plaintiff also requests $526.62 in costs for filing fees and service of process fees. The court finds this amount to be reasonable as well. *See Joe Hand Promotions, Inc. v. Phoenix Promotions LLC*, No. 10-15102, 2012 WL 3025107, at *4 (E.D. Mich. July 24, 2012). Therefore, pursuant to § 605(e)(3)(B)(iii), Plaintiff's request for attorneys' fees and costs in the amount of $6,431.12 is granted.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc # 18) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Defendants are jointly and severally liable to Plaintiff in the amount of $19,631.12, which is computed as:

1. statutory damages in the amount of $6,600.00;

2. enhanced damages in the amount of $6,600.00; and

attorneys' fees and costs in the amount of $6,431.12.

S/Denise Page Hood<br>
Denise Page Hood<br>
Chief Judge, United States District Court

Dated: September 28, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2018, by electronic and/or ordinary mail.

        <u>S/LaShawn R. Saulsberry</u>
        Case Manager

3.